Lois S. JOHNSON, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 15332.

United States Court of Appeals Sixth Circuit.

Aug. 11, 1964.

John S. Wrinkle, Chattanooga, Tenn., (F. Todd Meacham, Chattanooga, Tenn., on the brief), for appellant.

B. B. Guthrie, Asst. U. S. Atty., Chattanooga, Tenn. (J. H. Reddy, U. S. Atty., Chattanooga, Tenn., on the brief), for appellee.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This case was tried before the District Judge without a jury. The action was based upon a claim by a widow of a citizen who served in the Army during the last World War, and who took out a government life insurance policy in the sum of $10,000, with his wife, the appellant, as the beneficiary. The policy lapsed through nonpayment of premiums, and before it was reinstated, the insured died. The Government denied liability under the terms of the policy, and appellant brought suit against the Government to recover the face amount. The District Court entered judgment for the Government and thereafter denied appellant's motion for a new trial. From these determinations, the widow appeals.

The facts of the case, the applicable law, and the court's conclusions, are admirably set forth in the unreported opinion of Judge Leslie R. Darr, from which much of this opinion is taken.

Ephraim Foster Johnson was a soldier of World War II. On July 10, 1943, at the age of 36, he took out a National Service Life Insurance policy in the sum of $10,000, with his wife, Lois Spencer Johnson, as principal beneficiary. The premium payments were by the month and were paid by the insured direct to the Veterans Administration. Although the premium payments were only $9.90 a month, the policy lapsed on several occasions. At various times, the insured

borrowed enough from friends to make a monthly payment reinstating the policy. The last premium payment, not in dispute, was made on November 10, 1958, which covered the October 1958 premium. The policy contract contains a provision allowing thirty-one days of grace from the due date of the premium.

Mr. Johnson, the insured, was an attorney employed by the Government in a legal capacity. During the latter part of his life, he engaged in private practice while also serving as an assistant to a state district attorney general.

After the policy had admittedly lapsed, the insured made application for reinstatement on January 26, 1959, at his home in Chattanooga, Tennessee. Mr. Johnson did not have enough money to cover the premium past due. He sent the application to a kinsman in Atlanta, Georgia. This kinsman made out his check in the amount of $25.00, which was the sum necessary to be tendered and paid for reinstatement of the policy, and then mailed the check with Mr. Johnson's signed application for reinstatement, addressed to the Veterans Administration in Philadelphia.

The application for reinstatement required that it be fully completed and signed by the insured and mailed or otherwise delivered to the Veterans Administration immediately after it was dated and signed. The date on the application for reinstatement, January 26, 1959, was more than five days before its receipt by the Veterans Administration on February 5, 1959. In accord with established practices, under regulations requiring a separate health disclosure if the date of the application is five days or more before its receipt by the Veterans Administration, that Administration, after receipt of the tardy application, transmitted to the insured a proper form for the supplemental statement concerning his health. This supplemental health statement was never returned to the Veterans Administration because of the fact that the insured died before it was received at his address.

In the original application for reinstatement, the insured's answers to the health questions on the application were all favorable for reinstatement. The insured stated that he was in as good health as he was on the date of lapse; that he had not been ill or suffered or contracted any disease, injury, or infirmity; nor had he been prevented by reason thereof from attending his usual occupation; nor had he consulted any physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere in regard to his health, including any treatment or examination by a Veterans Administration physician or other physician acting on behalf of the Veterans Administration. All of these facts stated in the application were completely truthful as far as the insured knew, or could know, at the time.

On January 30, 1959, the insured visited the office of Dr. Julian Adams in Chattanooga, complaining of abdominal pain of a week's duration. Dr. Adams gave him some medicine for his pain. However, the symptoms persisted, and the insured returned to the doctor's office on February 2. At that time Dr. Adams diagnosed the insured's condition as being a bowel obstruction and recommended that he enter the Veterans Hospital in Nashville, Tennessee, which he did, on February 3, 1959, as an emergency patient. He was treated for an emergency condition, and underwent clinical examination, resulting in a diagnosis of carcinoma of the large bowel, which was later confirmed by autopsy. To take care of the emergency, a limited operation was performed, and at that time it was discovered that the insured had a lesion in his hepatic flexure of the colon. The wound caused by the operation became infected, but responded to treatment. The healing of the operative wound took some time, and, during this period, electro-cardiograms were taken which showed evidence that the patient had a recent myocardial infarction.

In the first examination, before the operation, Mr. Johnson's heart was found to be of normal size with regular rhythm,

but a tachycardia of 120. He appeared to be progressing satisfactorily from the standpoint of performing a resection operation, the doctors being of the opinion that the condition was operable and curable. On February 25, 1959, Mr. Johnson took a decided turn for the worse, had bronchial pneumonia, suffered a heart attack, and died. The primary cause of his death was the heart attack. The attendant disabilities were cancer of the colon and bronchial pneumonia.

The beneficiary of the insurance policy, Mrs. Johnson, made timely application for her late husband's insurance, which was denied by the Administrator of the Veterans Administration; and within the statutory time thereafter, the present suit was instituted. Mrs. Johnson's action poses two questions: (1) whether the reinstatement of the insurance policy was wrongfully denied; and (2) whether the insured was continually disabled from the time his insurance was in force until his death so as to entitle his beneficiary to the waiver of premiums.

The Government contended that there was no authority for a suit to compel reinstatement of a lapsed National Service Life Insurance policy, and that the administrative action denying payment of the insurance was final. The District Court, however, held that the rule governing the case was rather to this effect: that arbitrary or capricious action on the part of the Administrator may be corrected by a suit in a federal court. The court went on to say in its opinion that the medical and lay proof revealed that the insured was not inactive or disabled prior to January 23, 1959. It can be further said that the insured was not inactive or disabled on January 26, 1959, the date of his application, in spite of the fact that he told Dr. Adams, on his visit to the physician's office on January 30, that he had nausea and had vomited about a week before. This would not appear to be evidence that he was not generally in good health at that time. Dr. Adams apparently thought this was merely a transient indisposition and gave him medicine for pain and to remedy the condition. One who is up and around and merely suffers nausea, resulting in some vomiting with a little pain in his stomach or bowels, cannot be termed an ill man, within the meaning of the life insurance policy, when he is able to see a doctor, from whom he receives some pills or medicine for the relief of what seems to the doctor only a mild indisposition.

Mr. Johnson had not suffered or contracted any disease, injury, or infirmity; and had not been prevented by reason thereof from attending his usual occupation; and he had not consulted any physician or surgeon for medical advice or treatment at home, hospital or elsewhere at the time of his application for reinstatement on January 26, 1959.

However, the evidence reveals that the insured was not in the same state of health at the time of the lapse of the policy, as on February 5, 1959, the time the application for reinstatement and check for past-due premiums were mailed to the Veterans Administration, according to the postal stamp on the envelope containing the application and check. A review of the records sustains the trial court's conclusion that the proof precludes the claim that the insured was totally disabled from the time his policy was effective until his death, and that, even if it can be said that the insured had a terminal disease at the time his policy lapsed, he was certainly not totally disabled.

Appellant contends that the Veterans Administration had funds to the credit of the deceased which could have been used to continue the insurance in effect. These funds, it is claimed, consisted of a $19.20 unpaid dividend credit for the period from the anniversary date of the insurance on July 10, 1958, to the date of lapse on November 10, 1958, and a $0.60 premium credit. These sums had been placed by the Veterans Administration in suspense as unapplied credits.

The unpaid dividend and premium credit could not have been used to pay the monthly premiums of $12.70 re-

quired to continue the insurance in force until the veteran's death. In this regard, the Veterans Administration Regulation, set forth in 38 C.F.R. 8.26 (1956 Revised), here applicable and controlling, provides: "Dividends becoming payable after January 1, 1952, should be payable on the date preceding the anniversary of the policy unless the Administrator shall declare them payable on some other date." No other date was prescribed by the Administrator for the payment of dividends on the insurance in the instant case. The above regulation further provides, as to the dividends payable in this case, that "such dividends shall be held to the credit of the insured to be applied to pay monthly premiums becoming due and unpaid *after the date such dividends are payable.*" (Emphasis supplied.) The unpaid dividend credit in this case in the amount of $19.20 would not have become payable until the date preceding the anniversary of the policy, which would be July 10, 1959—except for the insured's prior death; and since that date was later than the date of lapse, the credit could not have been applied to pay premiums in default. See the well-reasoned opinion on this highly technical question, rendered by Judge Lemley in Burk v. United States, 133 F.Supp. 63 (E.D.Ark.). We agree with Judge Darr's conclusion that the argument that the policy might have been carried on to the time of Mr. Johnson's death, by applying such dividends as premiums, is without merit.

After judgment was entered for the Government, the widow filed a motion for a new trial on the ground of newly-discovered evidence. Judge Darr held that before such motion can be favorably considered, it must appear that the evidence was discovered since the trial; and that the evidence could not have been ascertained before the trial by the exercise of due diligence; and that the evidence is not merely cumulative; and that the evidence would probably produce a different result upon a new trial. The court held that all of the affidavits of Mr. Smith, Mr. Dych, and Mrs. Johnson in support of the motion for a new trial, insofar as they went to the merits of the case, contained statements that appellant's attorney could have easily ascertained before trial; and that in view of the testimony of Dr. Bond and Dr. Ende of the Veterans Hospital at Nashville, Tennessee, where Mr. Johnson died, and the testimony of Mr. Spence, the Postmaster at Chattanooga, and Mr. Meacham, an attorney of Chattanooga, both friends and close companions of the deceased, the affidavit of Mr. Dych was not persuasive. With regard to the last affidavit considered—that of Dr. Alexander, an osteopath at Columbia, Tennessee, that he saw Mr. Johnson one time about December 3 or 4, 1958, in the nighttime, and that Mr. Johnson was then in a desperate physical condition, weakened, emaciated and totally disabled, the court held that such affidavit was a statement of conclusions in the main, and of such nature as to have little probative value. Both Mr. Meacham and Mr. Spence testified that Mr. Johnson appeared to be in good health around mid-January 1959.

Appellant relied upon the claim that the insured was totally disabled, and that he was therefore entitled to rely upon a waiver of the premium. As the trial court said: "Doubtless, Mr. Johnson was not feeling too good prior to the time his bowels became blocked by the tumor, but according to the proof, he carried on with his work. * * * [A] person may have a progressive disease or ailment which does not totally disable him. The statute requires that an insured must be totally disabled as a condition for waiver of premium." It clearly appears that Mr. Johnson was not in as good health at the time the application and tender of payment of past-due premiums were delivered to the Veterans Administration on February 5, 1959, as he was on the due date of the premium in default or on the date when he signed the application for reinstatement, on January 26, 1959.

In entering judgment for the Government, Judge Darr obviously felt com-

passion for the insured soldier and his widow when he said: "This veteran had paid on this policy about sixteen years, apparently with a struggle to secure the money for the premiums, which results in some feeling of regret that, under the proof and within the law and regulations pertaining to National Service Life Insurance, the beneficiary has to be denied the insurance benefits." To the foregoing, an additional observation may be made. On January 26, 1959, when the insured soldier signed his application for reinstatement, his answers to all health questions on the application favored reinstatement of the policy.

According to the findings of Judge Darr, as set forth in his opinion in this case, Mr. Johnson, because of lack of funds, sent this application to a kinsman in Atlanta, Georgia, for the purpose of having such relative enclose a check for $25.00, which was the amount necessary to reinstate the policy. If the kinsman, upon receipt of this application form of Mr. Johnson, had sent in Mr. Johnson's signed application and the check for $25.00, on or before January 30, 1959, the insurance would have been reinstated, for the entries made by the officials of the Veterans Administration on the original application show that it was rejected because it was mailed to the Veterans Administration more than five days after Mr. Johnson signed the application for reinstatement.

We are not told why the application and check were not mailed by Mr. Johnson's kinsman until February 5, 1959, the date on which it would have been considered delivered to the Veterans Administration. The application for reinstatement contains much small print and many statements that might mislead one into thinking that the last date for mailing to the Veterans Administration was February 9, 1959.

It seems probable that Mr. Johnson's kinsman was misled by the directions in the application form of the Veterans Administration with regard to the time in which it was necessary to file the application for reinstatement; and that he assumed that a reinstatement of *life insurance only* was not governed by provisions on the reverse of the form; and that he considered that, if it were mailed before February 9, 1959, the insurance would be reinstated.

As an instance of the probability of Mr. Johnson's kinsman's being misled, these considerations are important: The form sent to Mr. Johnson by the Veterans Administration at the time of the lapse of his life insurance, and for the purpose of giving him the necessary information to enable him to secure a reinstatement, known as VA Form 9–389, disclosed on its face and at the top of the form, the following:

"NOTICE OF LAPSE—NO PHYSICAL EXAMINATION REQUIRED GOVERNMENT LIFE INSURANCE"

Below this statement, and after the blanks for the name of the insured, date of lapse, "DATE MAILED BY VA," and amount necessary to reinstate—in this case, $25.00—it was stated in the form in the middle of the page:

*"LAST DATE FOR MEETING THESE REQUIREMENTS 2–9–59"*

In the middle of the form appeared, in large block letters, the following:

"DO YOU KNOW THAT YOUR GOVERNMENT LIFE INSURANCE HAS LAPSED?"

Then, in smaller letters: "THE FOLLOWING INFORMATION IS IMPORTANT TO YOU."

Beneath the above statement appeared the following:

> "We regret to tell you that your Government life insurance policy lapsed on the date shown in Item 3 [11–10–58] since the premium due on that date was not timely paid. Any premium payment made since the date shown in Item 5 may be subtracted from the amount in Item 6D [$25.00]. The block(s) checked below show the action you should take to reinstate your insurance. The last date for meeting these require-

ments is shown in Item 8 [2–9–59]. After that date, the reinstatement requirements will change.

☐ You may apply for reinstatement BY COMPLETING THE APPLICATION ON THE BACK OF THIS FORM AND RETURNING IT TO US WITH THE AMOUNT SHOWN IN ITEM 6 D [$25.00]. The application and payment should be mailed IMMEDIATELY after the application is completed, dated and signed, or additional requirements will be necessary which may cause a delay in processing your application or a loss of your insurance. A physical examination report will be needed after the date shown in Item 8 [2–9–59].

☐ Your term period ends 7–9–61. We bring this to your attention since your policy cannot be reinstated after that date.

☐ You may reinstate by sending the amount shown in Item 6D [$25.-00] on or before the date shown in Item 8 [2–9–59]. IT IS NOT NECESSARY TO COMPLETE THE BACK OF THIS FORM.

☐ The payment described in Items 4 and 5 could not be used to prevent lapse. This payment is included in Item 6B.

☐ THE APPLICATION ON THE BACK OF THIS FORM IS NEEDED TO REINSTATE YOUR TOTAL DISABILITY INCOME PROVISION. If you wish to reinstate only your life insurance, THE APPLICATION IS NOT NEEDED, but you should send us the unpaid life insurance premiums.

☐ This notice of lapse applies to your total disability income provision only. Your life insurance is in force by _____."

The foregoing are here mentioned for the following reasons:

(1) The form, known as VA Form 9–389, might well mislead an interested person, if it were not meticulously and minutely examined. The "LAST DATE FOR MEETING THESE REQUIREMENTS" was stated to be February 9, 1959. Mr. Johnson signed and dated his application to reinstate on January 26, 1959. The date of his application would, therefore, have been well within the period stated of February 9, 1959. The instruction, taken alone, would indicate that Mr. Johnson was allowed a period until February 9, 1959, to mail to the Veterans Administration the signed application and the amount of $25.00 to reinstate the policy.

(2) The first paragraph of the form, preceded by a "box" or "block," stated *that application for reinstatement should be completed "ON THE BACK OF THIS FORM."* This referred to filling in a comprehensive application for reinstatement requiring the applicant to set forth that he was "NOW IN AS GOOD HEALTH AS YOU WERE ON THE DATE OF LAPSE"; that he had not been ill, contracted any disease, or consulted a physician, and the like, since the date of lapse; and it gave instructions that the application for reinstatement be fully completed, signed, and mailed to the Veterans Administration, immediately after it had been completed, dated, and signed.

(3) The second paragraph, preceded by a box or block, seems quite irrelevant, as it mentioned only that the term period ended on July 9, 1961, a fact in which no one at that time was interested.

(4) The third paragraph, preceded by a box or block, on the face of the form, stated that the applicant could reinstate by sending $25.00 on or before February 9, 1959, and further: "IT IS NOT NECESSARY TO COMPLETE THE BACK OF THIS FORM," which was that portion relating to state of health, medical advice, and the requirement of immediately mailing to the Veterans Adminis-

tration after the date of applicant's signature.

(5) The fourth paragraph, preceded by a box or block, is here irrelevant.

(6) The fifth paragraph, preceded by a box or block, stated on the face of the form that it was necessary to fill in the back of the form, as mentioned in the preceding paragraph of this opinion, in order "TO REINSTATE YOUR *TOTAL DISABILITY INCOME PROVISION*," but "If you wish to reinstate *only* your life insurance, THE APPLICATION IS NOT NEEDED, but you should send us the unpaid life insurance premiums." (Emphasis supplied.) Mr. Johnson did not carry disability income insurance. He wanted only to reinstate his life insurance and, according to this paragraph, he did not need to fill in the form on the reverse of the Notice of Lapse.

(7) The sixth paragraph, preceded by a box or block, informed the applicant: "This notice of lapse applies to your total disability income provision only. Your life insurance is in force by ———".

We mention the foregoing to show that an interested person might be misled by this contradictory information on the Notice of Lapse. Now, while Mr. Johnson might have been misled by all of these various statements, he was obviously not so misled. After he was advised on the face of the form that his insurance had lapsed, he was further advised, on the face of the form: *"The block(s) checked below show the action you should take to reinstate your insurance"; and the first and second paragraphs on the face of the form, which were preceded by a box or block, had a light but plainly visible check mark in each of the boxes.* The first of these paragraphs is important; the second, irrelevant. As said, the first paragraph informed Mr. Johnson that he could "apply for reinstatement BY COMPLETING THE APPLICATION ON THE BACK OF THIS FORM AND RETURNING IT TO US WITH [$25.00]. The application and payment should be mailed IMMEDIATELY after the application is completed, dated and signed, or additional requirements will be necessary which may

cause a delay in processing your application or a loss of your insurance."

Mr. Johnson followed the explicit directions of this first paragraph. He completed the application on the back of the form and sent it to his kinsman in Atlanta, Georgia, in order that he return it to the Veterans Administration with the amount needed to reinstate the insurance.

In spite of the fact that Mr. Johnson was not misled, the various paragraphs in the Notice of Lapse might well have misled an interested person in taking the steps necessary to reinstate the insurance. That might well explain the failure of Mr. Johnson's kinsman to mail the application for reinstatement and the amount required for reinstatement within five days from the signing of the application by Mr. Johnson.

Why did these various paragraphs, preceded by boxes or blocks, in the Notice of Lapse—even if they were not "checked" by the Veterans Administration as showing the action necessary to be taken to reinstate the insurance—inform the applicant that he could reinstate on or before February 9, 1959; that it was "NOT NECESSARY TO COMPLETE THE BACK OF THIS FORM"; and that if the applicant wanted to reinstate *only* his life insurance, "THE APPLICATION IS NOT NEEDED, but you should send us the unpaid life insurance premiums." The answer to these troublesome questions is submitted by government counsel and is clearly convincing.

The form, VA 9–389, above discussed, consists of the face of the form, and the reverse. This form is devised and utilized by the Veterans Administration for use, not only with respect to policies of National Service Life Insurance, but also for matters involving United States Government Life Insurance, and for matters involving Total Disability Income Provisions. Mr. Johnson's only policy was a National Service Life Insurance policy. The provisions, therefore, of the United States Government Life Insurance, and the Total Disability Income Provisions, are not applicable to this

case. Accordingly, each item mentioned on the form would not be pertinent in each particular course of inquiry and in each instruction as to reinstatement, for all three types of insurance.

 Since the instructions state that the "block(s) checked below show the action you should take to reinstate your insurance," *it follows that only the instructions after the blocks checked are involved; and it further follows that the instructions after the blocks not checked, are not here involved*. The controlling point is that the insured was informed what he must do to reinstate by the instructions following the block that had a check mark. Mr. Johnson, obviously, followed the instruction that was checked. He filled out the necessary form which was all that he was required to sign. He was further obliged to send the signed application to the Veterans Administration immediately after signing, or according to the regulations, five days thereafter, together with the sum necessary to reinstate. He attempted to do this by sending the signed application to reinstate to his kinsman, requesting him to mail it with a check to the Veterans Administration. This the kinsman did, but, while he received it probably on January 27, and could have mailed it to the Veterans Administration by January 30, which would have reinstated the insurance, the kinsman did not mail it in until February 5, 1959. This was too late, since it was more than five days after it had been signed by Mr. Johnson, and, at that time, Mr. Johnson was suffering from such a grave illness that the insurance could not have been reinstated as of the date the application was received.

The law is clear that, by virtue of the regulations, the application for reinstatement must be mailed to the Veterans Administration five days after it is signed. Undoubtedly Mr. Johnson thought, and assumed, that it would be mailed within five days after the date he made application for reinstatement, and relied upon his kinsman to mail the application with the check to the Veterans Administration.

Mr. Johnson did everything possible to reinstate his insurance. If his application, together with the check, had been mailed by his kinsman within four days after the kinsman received it, the insurance would have been reinstated. It is probable that the kinsman was misled by the statement on the Notice of Lapse to the effect that the last date for meeting the requirements for reinstatement was February 9, 1959.

This is a case of unusual hardship and deprivation resulting from the loss of this insurance to the widow of a soldier who had been paying the premiums for sixteen years. These premiums were paid in small monthly payments over a period of 192 months. Because of his constant battle with poverty, Mr. Johnson was often forced to borrow these amounts, in sums of $9.00 to $12.00, from brother lawyers, whenever such monthly payments became due—and the last payment, which was made to reinstate the insurance, was, as mentioned, advanced by a kinsman in Atlanta, Georgia. It was a hard struggle for Mr. Johnson to keep the insurance in effect for the benefit of his widow during the entire period of sixteen years.

The failure to mail the check and application appears to have been no fault of Mr. Johnson, and it is probable that his kinsman, to whom he confided the mailing, was also without fault, and was misled by what appeared to be the requirements on the Notice of Lapse, as he mailed the application and check on February 5, 1959, whereas he could have mailed it on or before January 30, 1959, which would have made the reinstatement effective. The case is not only unfortunate, but tragic. Whether a remedy may be found in legislative action is a subject beyond our competence, but it may merit consideration.

The judgment of the District Court and its denial of the motion for a new trial are affirmed.